## NIELSON v. NIELSON.

No. 3353.   Decided June 25, 1919.   (182 Pac. 366.)

1. HUSBAND AND WIFE—LIVING SEPARATE AND APART—PARTY AT FAULT. Finding that plaintiff wife and defendant husband have lived separate and apart without the fault of the plaintiff is not sustained in view of the undisputed evidence that plaintiff sold the home provided by defendant and in use by the family without consulting defendant and took up her abode elsewhere. (Page 548.)

2. HUSBAND AND WIFE—SEPARATE MAINTENANCE—HUSBAND'S FAILURE TO PROVIDE NECESSARIES—EVIDENCE. In suit for separate maintenance, finding that defendant husband had, without any excuse, failed to provide for plaintiff the common necessaries of life, and that plaintiff has no means of support, *held* not sustained by the facts proven. (Page 549.)

3. HUSBAND AND WIFE—SEPARATE MAINTENANCE—ESTABLISHING NEW DOMICILE—RIGHT OF WIFE. Defendant husband had the right to fix the place of the family domicile, and plaintiff wife by changing suitably and properly established domicile without husband's consent forfeited her right to require defendant to pro-

vide her separate support and maintenance elsewhere. (Page 549.)

Appeal from District Court, Third District, Salt Lake County; *John F. Tobin,* Judge.

Suit by Marie Nielson against Hans C. Nielson. Decree for plaintiff, and defendant appeals.

REVERSED.

*Marks & Jensen* of Salt Lake City, for respondent.

*Olson & Lewis* of Salt Lake City, for appellant.

CORFMAN, C. J.

June 21, 1918, plaintiff commenced this action in the district court of Salt Lake county against the defendant, her husband, for separate maintenance.

It is alleged in the complaint that ever since February 10, 1918, the plaintiff and defendant have lived separate and apart without fault of the plaintiff and since said date the defendant has willfully, without any excuse or justification, failed and neglected to provide for the plaintiff the common necessaries of life, and that the plaintiff has no means of support. The answer denies the foregoing allegations of the complaint, and affirmatively alleges desertion and abandonment of the defendant on the part of the plaintiff, and the willingness and ability of the defendant to provide the plaintiff with a home and suitable maintenance at all times. A reply was filed.

The district court, upon a trial, found the issues thus joined in the plaintiff's favor, and awarded her a decree of separate maintenance, providing for the payment by the defendant to the plaintiff thirty dollars monthly.

The defendant appeals and assigns as error insufficiency of the evidence to support the findings and decree of the trial court.

There is very little conflict in the testimony. It shows that the parties intermarried in 1898, at Salt Lake City, where, a couple of years later, they purchased a home on time. Title was taken in the plaintiff's name. Soon after the home was purchased the defendant secured employment at the salt works near Saltair, where he has since worked continuously for nineteen years. He earned from thirty to forty-five cents per hour. His monthly earnings varied (according to whether or not he worked overtime) from sixty-five dollars to one hundred dollars per month. The home cost eight hundred dollars, and, until paid for, the defendant contributed to plaintiff out of his earnings about forty dollars per month, afterwards, and until March, 1918, thirty dollars. The plaintiff worked out at times before the home was paid for. One child, a daughter, was born of the marriage, was reared, married, and left the home. The defendant visited the home two or three times each month. His last visit to the home while occupied by the plaintiff was in February, 1918, when, for the last time, he contributed out of his wages earned thirty dollars for the support of the plaintiff. Some talk was then had between the parties about selling the home to the Continental Oil Company, but no definite conclusion was arrived at. The defendant next visited the home in March, when he found it vacated by the plaintiff and the doors and windows out. The plaintiff had sold it to the Continental Oil Company for $1,300, and purchased another for $900 without consulting with or giving the defendant any notice of her intention of doing so. The defendant did not then know or learn the whereabouts of the plaintiff, became angry at her conduct in selling the home, returned to his work at the salt works without seeing plaintiff, and thereafter did not communicate with her nor she with him. The plaintiff received no further support from the defendant, and then commenced this action.

The testimony further shows that the plaintiff was receiving fifteen dollars·per month for caring for two of her minor grandchildren during the time the defendant failed to contribute out of his earnings to the support of plaintiff, from

February to June, 1918, when plaintiff's action was commenced.

At the trial of the case defendant testified that he had repeatedly requested the plaintiff to come with him and make a home at the salt works, where he was employed, but that she would not consent to do so. He also testified that he was still willing to provide a home there for her if she were willing to come, and that he had no objection to her keeping and caring for her minor grandchildren. The testimony further shows that some twenty families reside at the salt works, and that the community is provided with a school, where the children might attend.

Quoting from appellant's abstract, the defendant testified concerning the making of a home at his place of employment as follows:

"I spoke to her many times about going to the salt works to live. The last time was some time last winter. I don't remember whether it was before or after Christmas. I asked her quite a few times. It was down at the house that we talked about it. I told her: 'I can't make any money this way. It takes all I make to live. No use for me to work out there and spend every cent I make, for it takes every cent I make to live. What is the use in working steady like I do? I asked her to move out, and told her I had a house out there if she wanted to move. I was not living in a house out there at that time, but living in a bunkhouse. I did not have the house out there furnished at the time. She had my furniture in here. There were four empty houses out there at that time, but I did not rent one for her. I could rent one any minute she would come. At that time I was just as anxious to have her come out as I am now, just about the same, just about as anxious then as now. I was a little more anxious to have her come than now. I told the court that I did not care whether she came to live with me or not if she wasn't willing."

The plaintiff testified:

"Q. Mrs. Nielson, are you willing now to go out to the salt works and live there if the defendant will provide you with a home there? A. How can I live with him? He don't care for me. Q. Are you willing to go out to the salt works and live there? A. No, for I can't live with him, and I would not go out there and live with him. He swears and carries on. I can't live with him—he drinks, too. I would not go out there and live with him."

With regard to the drinking habit of the defendant the rec-

ord shows nothing more than that he admitted that upon two or three occasions during his married life he had drunk too much beer. His swearing habit consisted of saying "damn it" in Danish.

The trial court found:

"(3)  That ever since the 10th day of February, 1918, plaintiff and defendant have lived, and still continue to live, separate and apart from each other without the fault of plaintiff; that defendant has, and for more than six years last past has had good health; that defendant does now, and for more than six years last past has had the ability to and has earned continuously about $100 a month; that ever since the 10th day of February, 1918, defendant has willfully, without any excuse or justification, failed and neglected to provide plaintiff suitably or otherwise with the common necessaries of life.

"(4)  That plaintiff has no means of support."

As we view the testimony it is wholly insufficient to justify the foregoing findings of the trial court.

The finding that the plaintiff and defendant have lived separate and apart from each other without the fault of the plaintiff is not sustained in view of the undisputed evidence that the plaintiff sold the home provided by the defendant and in use by the family without consulting the defendant and took up her abode elsewhere.

The finding that since the 10th day of February, 1918, the defendant has without any excuse failed to provide for the defendant the common necessaries of life, and that the plaintiff has no means of support, cannot be sustained in view of the facts proven. The evidence conclusively shows that in February, 1918, the defendant contributed out of his earnings (as had been his custom to do monthly for many years) thirty dollars. She was then provided by the defendant with a home and in addition to that was receiving from another source fifteen dollars per month for the care of her grandchildren. Shortly thereafter, by her own act, the home was disposed of by sale. She received $1,300 thereby. As we read the record the money received by her for the home represented practically all of his life's savings. She could and did do as she pleased with that. She saw fit to reinvest $900 in a

new home for herself.   She still had $400 for her support and maintenance during the four months immediately preceding the commencement of the action, besides the fifteen dolalrs each month paid to her for caring for her grandchildren.   Ample means, in our judgment, for her support and maintenance in view of her station in life and the conditions and circumstances surrounding the parties when this action was begun.

It may be that the previous conduct of the plaintiff toward the defendant did not justify his swearing in her presence—"damn it" in Danish.   However, the course taken by the plaintiff in selling and disposing of the home and taking up her abode elsewhere without advising or consulting with the defendant, and leaving her whereabouts unknown to him, in our way of thinking, would.   Indeed, we might go farther and say that, considering the frailties of the average mortal, and considering the circumstances and conditions that confronted the defendant while visiting his home in March after plaintiff had abandoned it, he might have been excused for saying "damn it" in plain English, or, perhaps, in indulging himself in some of the well-recognized higher degrees of profanity.

We can arrive at no other conclusion after reading the record in this case than that the plaintiff is possessed with an earnest desire to live separate and apart from the defendant without any sufficient cause or excuse.   She was provided with a home in Salt Lake City, largely, at least, out of the earnings of defendant after many years of hard labor.   She was permitted to occupy it although the defendant desired and had many times requested her to go with him to his place of employment and make a home with him there in order to render his burdens lighter.   She was not inclined to do that, yet the defendant continued to support and maintain her to the best of his ability until she voluntarily sold their common home and took up her abode elsewhere without consulting or advising with him.   Under the law the defendant had the right to fix the place of the family domicile, and when suitably and properly established she had no right to

change it without his consent. In doing so without cause she forfeited her legal right to require the defendant to provide her separate support and maintenance elsewhere. The testimony shows that the defendant desires to establish the family domicile at the place where he labors. In the interests of family comfort, economy, and convenience, with the limited income of the defendant, we think the plaintiff should acquiesce in the wishes of the defendant in that regard. She testified that she was unwilling to do that. So long as she persists under the circumstances in remaining away from the defendant and in not making a common home with him, as a matter of law she is not living separate and apart from the defendant without her fault.

In our opinion the trial court erred in making its findings in plaintiff's favor, and in not finding for the defendant no cause of action.

It is therefore ordered that the judgment and decree of the district court be reversed, vacated, and set aside, and that judgment be entered herein, dismissing plaintiff's complaint. Defendant to recover costs.

FRICK, GIDEON, and THURMAN, JJ., concur.

WEBER, J., being disqualified, did not participate in the disposition of this case.